SQUIRE, SANDERS & DEMPSEY L.L.P.
Michelle M. Full (State Bar # 240973)
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887
Email: mfull@ssd.com

Attorneys for Defendant
MERLE SCOTT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| BILL A. DUFFY, INC., a California corporation d/b/a BDA SPORTS MANAGEMENT,<br><br>Plaintiff,<br><br>vs.<br><br>MERLE SCOTT,<br><br>Defendant. | Case No. 3:08-cv-00878-EDL<br><br>[E-Filing]<br><br>**DECLARATION OF DEFENDANT MERLE SCOTT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

1. My name is Isaac Merle Scott, III. I have been a resident of Miami, Florida for approximately six years. I am not a resident of California.

2. I am certified NBA Sports Agent. I have been engaged in the sports agent business for approximately 15 years.

3. For the past six years, I have been the President of United Sports and Entertainment Group LLC ("United"). United's principle place of business is presently located at 133 Grand Avenue, Coconut Grove, Florida 33133 ("the Coconut Grove Office"). Prior to the Coconut Grove Office, United's principal place of business was located at 3700 Poinciana Avenue, Coconut Grove, Florida.

4. I have represented clients all over the world. All of my daily operations and

negotiations are run from my Coconut Grove office.

5. Prior to becoming an agent, I played professional basketball both domestically and in South America.

6. While in South America, I developed a unique knowledge of the South American basketball market and became a fluent Spanish speaker.

7. In or about 2004, Bill Duffy ("Duffy") of BDA Sports Management ("BDA") approached me about forming a business relationship.

8. Duffy and BDA were interested in expanding its presence and representation in the South American basketball arena and thought that my experience in this regard would be a good fit for BDA.

9. The fact that I resided in Miami and had an established business in Miami were key factors in influencing BDA's negotiations with me. BDA and Duffy understood that Miami had significant South American ties. Miami is generally regarded as the "gateway to Latin America."

10. The fact that I had begun developing relationships with players and coaches at the University of Miami and the Miami Heat Franchise was also very attractive to BDA and Duffy.

11. The majority, if not all of the negotiations and discussions regarding my potential business relationship with BDA occurred via telephone from my office in Miami.

12. I never entered into a written agreement concerning my business relationship with BDA.

13. During the course of my discussions with BDA I was sent what purported to be a term sheet outlining the terms of my relationship with BDA. I received at least two term sheets throughout my relationship with BDA.

14. I immediately objected to the provisions of the term sheets. I was especially troubled by any language that would cause all of my clients to become BDA's clients for all purposes. Given my vast experience in the agent business, I thought

DECLARATION OF DEFENDANT SCOTT

- 2 -

SQUIRE, SANDERS & DEMPSEY L.L.P.

this language would have placed me at a severe disadvantage and obliterated any perceived benefit to establishing any business relationship with BDA.

15. Any agreement with BDA contemplated that I would continue to maintain my clients from the BDA Florida Office.

16. After joining BDA as an independent contractor, I opened the Coconut Grove office (the "BDA Florida Office"). That office was now referred to as a "BDA Sports Management" office. I received correspondence from BDA and Duffy addressed as such.

17. I continued to run all of my agent operations from the Coconut Grove office. Throughout my relationship with BDA, I never set up a California office, never established a California phone or fax number or mail box. I never received any correspondence at the BDA California office, nor did I ever establish any bank accounts in California.

18. The nature of my business has always required me to travel significantly throughout the world. Throughout my relationship with BDA, the majority of my business was conducted in or from his office in Florida. During my relationship with BDA, I traveled to California approximately four times a year.

19. I never received a salary from BDA. Any commission payments or reimbursements were paid to United and deposited into a Florida bank account. Any agreement with BDA would have been entered into in my capacity as President of United.

SQUIRE, SANDERS & DEMPSEY L.L.P.

DECLARATION OF DEFENDANT SCOTT

- 3 -

20. Any business conducted in furtherance of my relationship was conducted primarily in Florida.

21. I declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 10th day of April, 2008.

_____
Isaac Merle Scott, III

MIAMI/4219086.1

SQUIRE, SANDERS &
DEMPSEY L.L.P.

DECLARATION OF DEFENDANT SCOTT

- 4 -