JOHN R. CONGER, Esq /SB# 168114
BILL J. KUENZINGER, Esq /SB#159168
BROWN, HALL, SHORE & McKINLEY
3031 West March Lane, Suite 230 West
Stockton, CA 95219-6500
Telephone: (209) 477-8171
Facsimile: (209) 477-2549
Email: jconger@bhsmck.com

Attorneys for Plaintiff, BILL A. DUFFY, INC.,
a California corporation dba BDA SPORTS MANAGEMENT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BILL A. DUFFY, INC. a California corporation dba BDA SPORTS MANAGEMENT,<br><br>Plaintiff,<br><br>vs.<br><br>MERLE SCOTT, an individual,<br><br>Defendant | Case No. **3:08-cv-00878-EDL**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MERLE SCOTT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FAILURE TO JOIN AN INDISPENSABLE PARTY, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE**<br><br>Date:  May 20, 2008<br>Time:  1:15 p.m.<br>Place:  Courtroom E |

I.   **STATEMENT OF ISSUES TO BE DECIDED**

A   That this court has personal jurisdiction over defendant, Merle Scott;

B.   That United Sports & Entertainment Group is not an indispensable party;

C.   That plaintiff stated a valid claim for breach of contract; and

D   That venue is proper in the Northern District of California

## II. INTRODUCTION

Plaintiff's complaint and declaration in support thereof set forth allegations and facts demonstrating that the defendant had substantial, regular and consistent contacts with California sufficient for this court to exercise personal jurisdiction over him. Mr. Scott negotiated the subject contract in California and thereafter undertook substantial, regular and consistent contact with the state and its residents, including plaintiff, to further his own professional and financial gain.

Defendant has blatantly fabricated a series of allegations and mis-cited legal authority in his effort to challenge this court's jurisdiction over him. First, he has adamantly, but falsely denied executing the written contract that underlies this action in his own name, and claimed that any agreement, to the extent one existed, was not with him personally but his limited liability company, United Sports & Entertainment Group ("United"). Plaintiff's declaration definitively refutes these claims, and he has produced to defendant a copy of the fully executed agreement, the material allegations of which are plead in the complaint. Moreover, notably absent from Scott's declaration as it pertains to United is any allegation as to United's state of formation or its status of good standing. Plaintiff has determined that United is a Maryland LLC with a present status of "forfeited".

Second, defendant asserts that plaintiff has failed to state a claim for breach of contract as it did not attach a copy of the contract to the complaint or allege its terms verbatim. The authority cited for this proposition is inaccurate as set forth below. Plaintiff properly alleged the material terms of the agreement, thereby satisfying its pleading obligations.

For these reasons, plaintiff requests that defendant's motion to dismiss be denied.

## III. STATEMENT OF RELEVANT FACTS

Plaintiff, Bill A. Duffy, Inc. ("BDA"), is located in California, where it maintains its principal place of business. [See Declaration of William A. Duffy ("Duffy Decl.") at ¶ 2.] It is engaged in the business of providing management services for professional basketball players. [Id.] To carry out its

duties to its existing clients and recruit new clients, BDA engages the services of individuals like defendant, Merle Scott ("Scott"), to act as player representatives. [*Id.* at ¶¶ 2-3.]

William A. Duffy ("Duffy"), the president of BDA, first met Scott in Toronto, Canada. At the time, Scott was an agent working with IMG. [Duffy Decl. ¶ 4.] When Scott's relationship with IMG was terminated, he approached Duffy on a number of occasions over a period of time about working with BDA. [*Id.*] In the early part of 2004, Scott and Duffy met in person at Duffy's house in Walnut Creek, California. Over a number of days they negotiated the material terms of the agreement under which BDA engaged Scott's services as a player representative. [*Id.* at ¶ 5.] Contrary to the claims of Scott, none of the material terms of the agreement were negotiated anywhere other than California. [*Id.*]

The agreement was expressly between BDA and Scott, not an entity represented by Scott. [*Id.*] The terms of the agreement were memorialized in writing in California and Scott signed the agreement in his own name in his individual capacity. [*Id.*] At execution it was understood that Scott had a fully executed copy of the agreement as he faxed a copy of the fully executed signature page to Duffy from his personal fax machine. [*Id.*]1

As a player representative for BDA, Scott was responsible for recruiting new clients and servicing existing clients. [Duffy Decl. at ¶ 12.] His responsibilities in this regard were never limited to any geographic region. [*Id.*] In fact, while working under his contract with BDA, Scott represented clients located around the nation including California where BDA had a client playing for the Los Angeles Lakers. [*Id.*] He physically recruited clients in California. [*Id.*] He physically met with teams and provided management services to clients in California. [*Id.*] He participated in client

---

[1] A copy of the fully executed agreement has been provided to opposing counsel bearing the fax line information. [See Declaration of John R. Conger ("Conger Dec.") at ¶ 2.]
The material terms of the agreement were alleged in the complaint as opposed to attaching a copy of the entire agreement in order to protect the confidential information contained therein. [*Id.* at ¶ 3.] Moreover, the parties, through counsel, have agreed to keep the terms of the contract confidential and take the necessary steps to allow it to be submitted to the court under seal. [*Id.* at ¶ 4.]

contract negotiations and promotions in California. [*Id.*] He necessarily, regularly and on a consistent basis communicated with the BDA home office and its personnel in Walnut Creek and BDA's marketing office and personnel in Los Angeles to support his activities on behalf of BDA and, consequently, himself. [*Id.*] Moreover, he traveled to California for BDA meetings on a multiple times per year basis over the three-year term of the contract. [*Id.*, see also Scott Decl. at ¶ 18.] The fact that Scott lived in Florida was irrelevant to his business activities for BDA other than providing BDA the opportunity to market the fact that it had a presence in the southeast. [Duffy Decl. at ¶ 12.]

While Scott's efforts to manage and recruit clients for BDA were not bound by state borders, they were all facilitated, supported and funded by BDA in California. [Duffy Decl. at ¶ 13.] All business matters including, but not limited to, client contract preparation, promotional and marketing activities, financial services, and legal work, including immigration services for international clients, all took place through BDA's offices in California. [*Id.*] Thus, while player representatives like Scott operate world wide meeting with contacts and clients, all of their activities and efforts to provide client services and concurrently promote BDA and themselves as agents were, and are, supported, financed, and subsidized from and in California, and Mr. Scott relied and depended on this support in performing his duties under the contract, all to his financial and professional gain. [*Id.*]

During his three years with BDA, all of the BDA clients serviced by Scott were billed for his services from California. [*Id.* at ¶ 14.] All payments from BDA clients on which Scott's compensation was calculated were collected by BDA in California and paid to Scott from California. [*Id.*] With regard to Scott's payments, after he executed the contract between he and BDA in his own name and individual capacity, he requested, for purposes undisclosed to BDA, that his checks be made payable to United Sports & Entertainment Group, which request BDA honored. [*Id.*] BDA, however, never had any agreement with United Sports & Entertainment Group ("United") or Scott in his capacity as its purported president. [*Id.*]

Note, Scott, in his declaration, fails to allege the state where United was formed or whether it is presently in good standing. [Scott Decl.] Scott's counsel has admitted that United is not a Florida entity. [Conger Decl. ¶ 5.] Plaintiff's investigation indicates that United was formed in 2002 in Maryland and that it is not in good standing at the present time. [*Id* at ¶ 6.]

## IV. LAW AND ARGUMENT

### A. The Facts of This Case Establish that This Court Has Personal Jurisdiction Over the Defendant

While defendant's contacts with California are arguably sufficient to subject him to this court's general jurisdiction, it is inarguable that they satisfy the accepted "three-part test for limited jurisdiction." To establish limited jurisdiction a plaintiff must make a prima facie showing that (1) the non-resident defendant must have purposely availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum related activities; and (3) exercise of jurisdiction must be reasonable. (*Roth v. Garcia Marquez* (9th Cir. 1991) 942 F.2d 617, 621-622; *Ballard v. Savage* (9th Cir. 1995) 65 F.3d 1495, 1498.)

#### 1. Purposeful Availment

The purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. (*Roth* at 621.) In the context of a contract, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other state for the consequences of their activities. (*Id.* citing *Burger King v. Rudzewicz* (1985) 471 U.S. 462, 473.)

In *Roth*, the court found purposeful availment where no contract was ever reached, the overwhelming majority of the negotiations for the potential agreement occurred outside of California, and the defendants only visited California twice. It did so, however, as the contract being negotiated

contemplated future consequences involving a resident of the forum and would have created continuing obligations to that resident in the forum. (*Id.* at 622.)

Here, the contract was negotiated in California and fully executed. As such, it definitively created and established an on-going relationship and obligations between the defendant and BDA. During the entirety of that on-going relationship, the defendant maintained regular, consistent and purposeful contacts with California and its residents, coming to California and communicating with its residents regularly while performing services for BDA and its clients for which he received compensation. [Duffy Decl. ¶¶ 2-14.] Note, to the extent the facts established by BDA conflict with those claimed by the defendant in his declaration, those conflicts must be resolved in favor of BDA. (*WNS, Inc. v. Farrow* (5th Cir. 1989) 884 F.2d 200, 204.)

As was the case in *Roth*, where the court found purposeful availment, this was not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum. The contract's subject called for continuing and extensive involvement in the forum. Thus, it is unquestionable that Scott purposely availed himself to the State of California and its jurisdiction with regard to the matter at hand.

2. Arising Out of Forum Related Activities

It is also unquestionable that plaintiff's claim arises out of the defendant's forum related activities. In *Roth*, the court found that this prong of the test was satisfied where the agreement was negotiated and executed by a party who was in the forum at the time, namely, the plaintiff. (*Roth* at 622.) Here, even if you can set aside defendant's palpable lack of creditability and accept his unfounded claim that he negotiated the agreement while in Florida, it is uncontested that BDA, through its president, William A. Duffy, negotiated and executed the agreement while he was in California. [Duffy Decl. ¶ 5.] Accordingly, the second prong of this jurisdictional test is satisfied.

### 3. Reasonableness.

Given the facts set forth above, it can only be concluded that California's exercise of jurisdiction over the defendant is reasonable. As purposeful availment has been established, California's exercise of jurisdiction is presumptively reasonable. (*Roth* at 625.)

Even without that presumption, however, California's exercise of jurisdiction is reasonable. The factors taken into consideration in determining reasonableness include (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. (*Roth* at 623.)

(i) As clearly set forth above, the defendant purposely interjected himself into the forum state's affairs by doing business in California with its residents on a regular basis over an extended period of time. (See discussion at *Id*.)

(ii) This fact also shows that the burden on having to defend himself here is minimal as Scott managed to travel here, and all over the country, on a regular basis where it was to his financial gain. Moreover, the defendant has shown no inconvenience in having to defend himself here that would constitute a deprivation of due process. (See discussion at *Id*.)

(iii) The conflicts of law issue is a non-issue. While not necessary, if it were determined to be appropriate, this court could apply the necessary principals of Florida law. (See discussion at *Id*.)

(iv) California has a greater interest in protecting her residents than non-residents and it must be recognized that this is not simply a contract action. There is also the tort action of conversion that has been plead and is unchallenged in defendant's motion to dismiss. (See discussion at *Id*. at 624.)

(v)  California is the most efficient jurisdiction to obtain a judicial resolution as the majority of the witnesses that might be called to testify in this matter are residents of California. (See discussion at *Id*.)

(vi)  It also goes without saying that California is the most convenient jurisdiction for the plaintiff to obtain affective relief. (See discussion at *Id*.)

(vii)  Finally, under the circumstances, California has the greatest interest in adjudicating this matter even if Florida was an alternative forum within which this matter could have been brought. (See discussion at *Id* at 624-625.)

Thus, on balance these factors all indicate that California's exercise of jurisdiction would be reasonable even it were not presumed to be so.

As each of the three-part tests is satisfied in plaintiff's favor, California has personal jurisdiction over the defendant.

B.  <u>The Plaintiff Has Named All Necessary Parties In Its Complaint.</u>

Scott first alleges that the parties never entered into a formal written agreement concerning his relationship with BDA. [Scott Decl. at ¶ 12.] He thereafter contradicts himself and states that any contractual agreement between the parties would have been between plaintiff and himself, as president of United. [Scott Decl. at ¶ 19.] As alleged in plaintiff's complaint and set forth in the Declaration of William A. Duffy, a written contract between the parties did exist and was executed by Mr. Scott in his individual capacity. [Duffy Decl. at ¶¶ 5-11.] As set forth previously, any factual conflicts in the parties' declarations are to be resolved in plaintiff's favor. (*WNS, Inc v. Sparrow* (5th Cir. 1989) 884 F.2d 200, 204.) Thus, for the purposes of this motion plaintiff has established that there was indeed a written contract executed by Scott in his individual capacity and not on behalf of any entity including United Sports & Marketing Group, LLC.

With specific regard to United Sports & Marketing Group, LLC, it is notable that it is not a Florida entity. It is also notable that plaintiff's investigation has identified it as a Maryland limited liability company formed in 2002 whose present status is "forfeited". [Conger Decl. ¶¶ 5-6.]

Under the facts established above, there is no basis upon which to find United an indispensable party in this matter.

C. <u>By Alleging the Material Terms of the Contract in its Complaint, Plaintiff Has Stated a Claim for Breach of Contract</u>

Defendant argues that plaintiff's complaint is deficient because plaintiff did not attach a copy of the written contract or set out its terms verbatim citing *Campbell v. Allstate Insurance Co.* 1995 U.S. Dist. LEXIS 21849, No. CV95-1171-WDK, at *6 (C.D. Cal. May 17, 1995). Defendant's reading of *Campbell*, however, is too broad. The *Campbell* opinion cites *Otworth v. Southern Pacific Transportation Co.* (1985) 212 Cal.Rptr. 743, 747 for the proposition being asserted by defendant. The *Otworth* court cites *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59 for the proposition. The *Wise* court, however, stated ". . . where a written instrument is the foundation of a cause of action, it **may** be pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference." ( emphasis added.) Thus, California law does not require either a verbatim recitation of the terms of the contract or a copy of the contract to be attached to the complaint to plead a cause of action for breach of written contract. Those are simply two of the means by which a plaintiff may satisfy its pleading obligations. As set forth in *Perry v. Pam Robertson* (1988) 201 Cal.App.3d 333, 341, "a written contract can also be pleaded by alleging the making and the substance of the relevant terms." As BDA has pleaded the relevant term of the contract, its cause of action is sufficient to state a claim.

D.  <u>Venue is Proper in California</u>

While defendant noticed its motion as being partially based on improper venue, he makes no such argument in his points and authorities. In his points and authorities defendant cites 28 U.S.C. section 1631 for the proposition that "whenever a civil action is filed in a court ... and the court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed". Defendant proceeds to argue that this action could have been brought in Florida. While that may or may not be the case, there is no "want of jurisdiction" in California and no need for this court to transfer venue under 28 U.S.C. section 1631. As set forth above, jurisdiction is proper in this court and no argument has been made that venue is more proper elsewhere despite this court jurisdiction.

## CONCLUSION

For the above-stated reasons, plaintiff respectfully requests that defendant's motion to dismiss be denied. Alternatively, should the court be inclined to grant defendant's motion on the basis of any of the argued points, plaintiff requests that the court grant it leave to amend.

DATED:  April 29, 2008                     Respectfully submitted,

                                           BROWN, HALL, SHORE & McKINLEY

                                           JOHN R. CONGER
                                           Attorneys for Plaintiff