1 JOHN R. CONGER, Esq./SB# 168114
2 BILL J. KUENZINGER, Esq./SB#159168
  BROWN, HALL, SHORE & McKINLEY
3 3031 West March Lane, Suite 230 West
  Stockton, CA 95219-6500
4 Telephone: (209) 477-8171
  Facsimile: (209) 477-2549
5
6 Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12 BILL A. DUFFY, INC. a California          Case No. **3:08-cv-00878-EDL**
   corporation dba BDA SPORTS
13 MANAGEMENT,                               **DECLARATION OF WILLIAM A.**
                                             **DUFFY IN SUPPORT OF PLAINTIFF'S**
14                            Plaintiff,     **OPPOSITION TO DEFENDANT'S**
                                             **MOTION TO DISMISS**
15 vs.
16                                           **Date:    May 20, 2008**
   MERLE SCOTT, an individual,              **Time:    1:15 p.m.**
17                                           **Place:   Courtroom E**
                              Defendant.
18

19        I, William A. Duffy, hereby declare as follows:

20        1.    I am the president of plaintiff Bill A. Duffy, Inc., a California corporation doing

21 business as BDA Sports Management (ABDA@), and have personal knowledge of each matter stated

   herein.
22
          2.    BDA=s principal place of business is in California. It is engaged in the business of
23
   providing management services to professional basketball players.
24
          3.    As president of BDA, one of my responsibilities is the engagement of player
25
   representatives/agents. In carrying out this responsibility, I meet with and negotiate the terms of the
26
   agreements with prospective player representatives. Player representatives recruit and represent BDA
27
   clients.
28

{00061997.}                              - 1 -

4.    I first met defendant Merle Scott in Toronto, Canada, when he was an agent working for IMG. After Mr. Scott=s relationship with IMG was terminated, he approached me about a position with BDA on a number of occasions spanning many months.

5.    In and about the beginning of 2004, Mr. Scott came to my house in Walnut Creek, California, where, over a number of days we negotiated the material terms of the agreement under which he would work as a player representative for BDA. The terms of that agreement were memorialized in writing and Mr. Scott, in his individual capacity, and not as a representative of any entity, executed that written agreement on March 18, 2004. I executed the agreement on the same day while in California. Notably, none of the material terms of that agreement were negotiated anywhere other than California.

6.    The agreement was effective April 1, 2004, and remained effective until June 30, 2007, when it lapsed under its own terms.

7.    At the time the agreement was executed Mr. Scott did have a copy of said agreement in his possession. In fact, he sent a copy of the fully executed agreement to my office imprinted with his fax number across the top of it.

8.    The material terms of the agreement have been plead in the complaint filed by BDA against Mr. Scott. My counsel has provided Mr. Scott=s counsel with a copy of the agreement due to Mr. Scott=s unsupportable claims that he never signed an agreement with BDA, much less one that stated that all clients that Mr. Scott had prior to entering the subject agreement would become clients of BDA.

9.    My counsel has reached an agreement with Mr. Scott=s counsel that the agreement and its specific terms are confidential and when it is submitted to the court, the parties will take the necessary steps to file it under seal.

10.    This is the only written agreement ever negotiated and executed between BDA and Mr. Scott. In summary, the material terms of the agreement are as follows:

(a)    Mr. Scott was to act as a certified National Basketball Association ("NBA") agent for purposes of recruiting and managing NBA basketball players/clients on behalf of BDA;

(b)    All clients belonged to BDA, whether managed by Mr. Scott or by other agents, except as follows: (i) during the first year of the agreement, existing clients of Mr. Scott prior to April 1, 2004, would remain separate from BDA in terms of revenue; and (ii) during the second year of the agreement, existing clients of Mr. Scott prior to April 1, 2004, would remain separate from BDA in

terms of revenue. Effective July 1, 2006, all existing clients of Mr. Scott prior to April 1, 2004, became clients of BDA for all purposes;

        (c)     BDA paid certain expenses of Mr. Scott, and Mr. Scott was paid a salary plus commissions for his duties; and

        (d)     Clients belonging to BDA upon the expiration of the agreement would remain clients of BDA unless they, the clients, terminated BDA's services.

      11.     Despite the Agreement providing that all clients would remain BDA's, upon expiration of the Agreement Mr. Scott demanded and received from certain players, or their financial advisors in California, in violation of the agreement, payment of all fees that are and were rightfully due to be paid to BDA.

      12.     In practice, Mr. Scott was responsible for recruiting new clients and servicing existing clients. His responsibilities in this regard were never limited to any geographic region. In fact, while working under his contract with BDA, Mr. Scott represented clients located around the nation including California where BDA had a client playing for the Los Angeles Lakers. He physically recruited clients in California. He physically met with teams and provided management services to clients in California. He participated in client contract negotiations and promotions in California. He necessarily, regularly and on a consistent basis communicated with the BDA home office and its personnel in Walnut Creek and BDA=s marketing office and personnel in Los Angeles to support his activities on behalf of BDA and consequently himself. Moreover, he traveled to California for BDA meetings on a multiple times per year basis over the three-year term of the contract. The fact that Mr. Scott lived in Florida was irrelevant to his business activities other than providing BDA the opportunity to market the fact that it had a presence in the southeast.

      13.     While Mr. Scott's efforts to manage and recruit clients for BDA were not bound by state borders, they were all facilitated, supported and funded by BDA in California. All business matters, including, but not limited to client contract preparation, promotional and marketing activities, financial services, and legal work, including immigration services for international clients, all took place through BDA offices in California. Thus, while player representatives like Mr. Scott operate world wide, meeting with contacts and clients, all of their activities and efforts to provide client services and concurrently promote BDA and themselves as agents were, and are, supported, financed, and subsidized from and in California, and Mr. Scott relied on this support in performing his duties under the contract, all to his financial and professional gain.

1    14    During his three years with BDA, all of the BDA clients serviced by Mr. Scott were

2    billed for his services from California. All payments from BDA clients on which Mr. Scott=s

3    compensation was calculated were collected by BDA in California and paid to Mr. Scott from

4    California. With regard to Mr. Scott=s payments, after he executed the contract between he and BDA

5    in his own name and individual capacity, he requested, for purposes undisclosed to BDA, that his

6    checks be made payable to United Sports & Entertainment Group, which request BDA honored. BDA,

7    however, never had any agreement with United Sports & Entertainment Group or Mr. Scott in his

     capacity as its purported president.

8    I declare under penalty of perjury under the laws of the United States that the foregoing is true

9    and correct.

10    Executed on April 25, 2008, at Walnut Creek, California.

11

12    _____
                WILLIAM A. DUFFY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00061997 }                              - 4 -

CV 08 0878-EDL                                                    DECLARATION OF WILLIAM A. DUFFY