SQUIRE, SANDERS & DEMPSEY L.L.P.
Michelle M. Full (State Bar # 240973)
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone:  +1.415.954.0200
Facsimile:  +1.415.393.9887
mfull@ssd.com

Robert C.L. Vaughan, Esq. (Admitted Pro Hac Vice)
Mia Burroughs Fraser, Esq. (Admitted Pro Hac Vice)
200 South Biscayne Blvd., Suite 4000
Miami, Florida 33131
Telephone:    (305) 577-7000
Facsimile:    (305) 577-7001
rvaughan@ssd.com
mburroughs@ssd.com

Attorneys for Defendant
MERLE SCOTT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| BILL A. DUFFY, INC., a California corporation d/b/a BDA SPORTS MANAGEMENT,<br><br>Plaintiff,<br><br>vs.<br><br>MERLE SCOTT,<br><br>Defendant. | Case No.  3:08-cv-00878-EDL<br><br>**[E-Filing]**<br><br>**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant, Merle Scott ("Scott") hereby files his answer, affirmative defenses and counterclaim to Plaintiff, Billy A. Duffy, Inc.'s ("Duffy") Complaint and, expressly reserves his right to seek leave to further amend his answer, defenses and counterclaim based upon subsequent discovery. In support of his answer, defenses and counterclaim, Scott alleges as follows:

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM

# ANSWER

## JURISDICTION AND VENUE

1. Admitted.

2. Admitted.

3. The allegations contained in paragraph 3, state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

4. The allegations contained in paragraph 4, state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

5. Denied.

6. Denied.

7. Admitted that Defendant paid certain expenses of Scott, otherwise denied.

8. Denied.

9. Denied

10. The allegations contained in paragraph 10 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

11. Scott realleges and incorporates his answers to paragraphs 1 through 10 as if fully set forth herein.

12. Denied.

13. The allegations contained in paragraph 13 state a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied.

14. The allegations contained in paragraph 14 state a legal conclusion to which no

response is required. To the extent a response is required, the allegations are denied.

## SECOND CLAIM FOR RELIEF

### Conversion

15. Scott realleges and incorporates his answers to paragraphs 1 through 10 as if fully set forth herein.

16. Denied.

17. The allegations contained in paragraph 17 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

18. The allegations contained in paragraph 18 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

19. The allegations contained in paragraph 19 state a legal conclusion to which no response is required. To the extent a response is required, Scott is without knowledge to form a belief as to the truth of the allegations.

20. The allegations contained in paragraph 20 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## THIRD CLAIM FOR RELIEF

### Money Had and Received

21. Scott realleges and incorporates his answers to paragraphs 1 through 20 as if fully set forth herein.

22. Denied.

23. Denied.

24. Denied.

# FOURTH CLAIM FOR RELIEF

## Constructive Trust

25. Scott realleges and incorporates his answers to paragraphs 1 through 20 as if fully set forth herein.

26. Denied as to Defendant's alleged wrongful conduct. The Defendant is without knowledge to form a belief as to the truth of the remaining allegations.

27. The allegations contained in paragraph 27 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## PRAYER

Defendant specifically denies that Plaintiff is entitled to any of the relief set forth in the Prayer for relief.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver, estoppel, and/or laches.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

If any monies are owed to Plaintiff, Defendant's right to retain those monies is equal to that of Plaintiff and thus, Defendant must prevail.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part because any alleged agreement between the parties was unconscionable at the time such agreement was made.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by setoff and/or recoupment.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted in whole or in part by the exclusive jurisdiction of the

National Basketball Association's ("NBA") Collective Bargaining Agreement and/or Standard Player Contracts.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to specify facts necessary to sustain a claim for punitive damages against Defendant as required by California Civil Code Section 3294, even if such a claim were ultimately alleged.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a valid claim for punitive damages against Defendant, and any such award would violate the State and Federal Constitutions.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each purported cause of action alleged therein against Defendant, fails to state facts sufficient to constitute a cause of action or a claim upon which relief may be granted.

### COUNTERCLAIM

The Defendant/Counter-Plaintiff, Merle Scott ("Scott"), sues the Plaintiff/Counter-Defendant, Bill A. Duffy, Inc. d/b/a BDA Sports Management ("BDA") and alleges:

### Nature of the Action

1. This is an action for breach of implied contract, tortuous interference with a contractual relationship, tortuous interference with potential economic relationships, conversion, money had and received, constructive trust, unjust enrichment and quantum meruit.

### PARTIES

2. MERLE SCOTT is an individual and resident of Miami, Florida.

3. Upon information and belief, Plaintiff/Counter-Defendant, BILL A. DUFFY, INC. is a California corporation with its principal place of business in Walnut Creek, Contra Costa County California, and is and at all time mentioned here was, doing business as BDA SPORTS MANAGEMENT.

## JURISDICTION

4. This Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity between Counter-Plaintiff and Counter-Defendant. Damages claimed in this Action exceed, $75,000, the Court's jurisdictional minimum.

5. This action arises out of wrongful acts committed by Duffy in this judicial district, this subjects Defendant to jurisdiction here.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The Parties' Initial Meetings

6. Scott has been engaged in the sports agent business for over 15 years. Prior to becoming an agent Scott played professional basketball both domestically and in South America for several years.

7. During the course of his career as a sports agent, Scott has worked both independently and with established sports agencies.

8. Scott has and continues to maintain an impressive roster of professional athletes for whom he acts as a certified player representative.

9. Scott first met Duffy in or about 1999 in Toronto Canada. Scott had a relationship with another major sports agency at that time.

10. In or around the summer of 2002, Bill A. Duffy ("Duffy"), president of BDA contacted Scott for his assistance with a player contract Duffy had negotiated with the Miami Heat. Shortly thereafter, Duffy approached Scott regarding a potential relationship with BDA.

11. At that time Scott continued his business as a sports agent as president and owner of United Sports and Entertainment Group LLC.

12. In or about February 2003, Scott flew to Los Angeles, California to meet with

BDA executives to discuss a potential business relationship. During that time, Scott discussed terms of a potential agreement with BDA and Scott decided to pursue further discussions regarding a relationship with BDA.

13. At the time Scott joined BDA, Scott had his own clients and had expended tremendous time and effort in cultivating relationships with potential clients and recruits.

14. In or about 2003, Duffy presented Scott with a draft proposed term sheet outlining the terms of a potential relationship with BDA. The term sheet included several unacceptable terms, and in particular, a clause which would allow BDA to eventually take over all Scott's clients for all purposes.

15. Given Scott's extensive experience and prior and existing client relationships, he adamantly objected to that term. Duffy promised that the parties would work out a resolution to Scott's objection.

16. The parties' relationship began without a formal agreement and continued for approximately four (4) years, during which time Scott recruited and signed many promising athletes. Those clients were signed as sole clients of Scott.

17. Although BDA reimbursed Scott for some expenses associated with his recruiting efforts, Scott was never paid a salary by BDA.

**BDA's Ousting of Scott**

18. In or about 2006, Duffy informed Scott that he was concerned about the direction of their relationship. Duffy assured Scott that despite his concerns, he should continue current recruiting efforts and that the parties would discuss Duffy's concerns at a later time.

19. Accordingly, Scott continued to expend time, effort and money in maintaining and developing his recruiting efforts.

20. Scott cultivated several relationships with coaches, players and athletic directors

and families in an effort to recruit certain high school and college talent.

21. Many of those relationships began prior to Scott joining BDA

22. As a result of Scott's individual efforts, several recruits declared their preliminary intentions to sign on as his clients.

23. In or about April of 2007, Duffy abruptly and without notice ended BDA's relationship with Scott.

24. Despite the significant pre-existing relationships cultivated by Scott and the major advances he made in securing recruits as future clients, BDA intentionally interfered with those relationships. Specifically, BDA intentionally and maliciously ousted Scott so that BDA could sign those athletes for their sole benefit to prevent Scott from receiving any fees or commissions.

25. In addition, both prior to and during his relationship with BDA, Scott individually cultivated several relationships with players and coaches in an effort to recruit certain NBA players and other professional athletes.

26. Several of those relationships began prior to Scott joining BDA and had been developed over many years through individual efforts and personal contacts in the basketball industry.

27. Despite Scott's recruiting efforts and pre-existing relationships, Duffy and BDA intentionally interfered with those relationships. Specifically, BDA intentionally and maliciously ousted Scott so that BDA could sign those athletes for their sole benefit and to prevent Scott from receiving any fees or commissions.

### Scott's Clients

28. Both prior to and after joining BDA, Scott negotiated several team and endorsement contracts on behalf of certain NBA players.

29. During the course of the parties' relationship Scott continued to recruit and

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM
- 8 -

negotiate contracts on behalf of certain players.

30.  Scott is listed as the agent of record on any endorsement and/or team contracts he negotiated during the parties' relationship. Neither BDA nor Duffy are listed as co-agents on any contracts negotiated by Scott.

31.  Pursuant to industry standards, the rules that govern the NBA Players' Association and the NBA Collective Bargaining Agreement, only the named agent of record (i.e., the agent who negotiated the terms of the contracts) is entitled to agent fees and commissions.

32.  The agent of record is entitled to receive agency fees and commissions for the life of the contract, even if that player decides to change agency representation after executing the relevant agreement.

33.  Scott was paid commissions and agent fees from both team and endorsement contracts by certain players and/or financial advisors during his relationship with BDA.

34.  Scott shared portions of those fees and commissions with BDA until BDA terminated its relationship with Scott.

35.  After his termination, some of Scott's players decided to sign with BDA. Nevertheless, in accordance with industry standards and the rules governing the NBA Players' Association, Scott continued to receive commissions and agency fees under those contracts he negotiated and where he was the named agent of record.

36.  Despite BDA's termination of its relationship with Scott and Scott's unequivocal right to certain fees and commissions as the named agent of record who negotiated specific contracts, BDA has improperly received monies due to Scott under the terms of those contracts. BDA has refused to remit those monies to Scott.

37.  All conditions precedent to the maintenance of this action have occurred have been performed or have been waived.

## COUNT I
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

38. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39. Scott has negotiated endorsement and team contracts on behalf of a certain NBA player.

40. Scott is a party to those contracts as agent of record. There is no other agent of record listed on the contracts. As such Scott is entitled to certain agency and professional fees.

41. The contracts at issue are valid and remain in full force and effect.

42. BDA had and continues to have full knowledge of this contractual relationship.

43. Despite this knowledge, BDA intentionally interfered with those contractual relationships causing damage to Scott.

44. BDA's actions proximately caused damage to Scott, according to proof but in excess of the jurisdictional minimum of this Court.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant in according to proof, together with prejudgment interest, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT II
## TORTIOUS INTERFERENCE WITH PROPSPECTIVE ECONOMIC RELATIONSHIPS

45. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

46. Scott cultivated relationships with several college level recruits and NBA players. Those relationships were cultivated in an effort to sign those players as Scott's clients.

47. Scott had a prospective economic relationship with several college level recruits, NBA players and other professional athletes to negotiate team and endorsement contracts on their

behalf.

48.  Those relationships had a high probability of future economic benefits to Scott. Specifically, many of the athletes who were recruited by Scott would have signed as clients of Scott, but for BDA's intentional and malicious actions.

49.  BDA had full knowledge of these relationships.

50.  BDA intentionally interfered with those relationships by defaming Scott and otherwise engaging in a course of conduct designed to disrupt those relationships.

51.  Those relationships were disrupted due to BDA's actions

52.  BDA's conduct is in violation of industry standards and the rules governing the NBA Player's Association and/or the NBA Collective Bargaining Agreement.

53.  BDA's actions proximately caused damage to Scott, according to proof but in excess of the jurisdictional minimum of this Court.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant according to proof, together with prejudgment interest, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT III
## CONVERSION

54.  Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

55.  At material times, Scott was and is entitled to certain agency and professional fees paid to BDA under contracts negotiated by Scott and for which Scott is listed as agent of record.

56.  BDA has taken possession of those fees and converted them to its own use and possession the exclusion of Scott's lawful right thereto.

57.  As a proximate result of BDA's wrongful conversion, Scott has suffered, and continues to suffer damages in an amount according to proof, but exceeding the minimum

jurisdictional amount of this Court.

58. BDA's actions were willful, wanton, malicious and oppressive, and were undertaken with the intent to defraud, and justify an award of exemplary and punitive damages in an amount according to proof.

59. Scott has been forced to incur attorneys fees and costs in pursuit of the converted property.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant according to proof, together with prejudgment interest, punitive and exemplary damages, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT IV
## MONEY HAD AND RECEIVED

60. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

61. BDA has become indebted to Scott for money had and received by BDA as alleged above.

62. BDA has failed to repay these monies to Scott.

63. BDA owes monies to Scott in an amount according to proof.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant according to proof, together with prejudgment interest, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT V
## CONSTRUCTIVE TRUST

64. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

65. Scott has suffered and continues to suffer, damages for loss of agency fees and commissions being received by BDA. Those fees rightfully belong to Scott.

66. BDA has no legal or equitable right to those agency and professional fees and commissions, instead Defendant is an involuntary trustee, holding said fees and commissions in constructive trust for Scott with the duty to covey the same to Scott.

**WHEREFORE,** Scott demands a declaration that such fees and commissions be remitted to Scott, including interest, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT VI
## UNJUST ENRICHMENT

67. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

68. BDA was introduced to several college athletes, NBA players and other professional athletes due to Scott's individual efforts.

69. BDA induced Scott to expend time, effort and money in recruiting these individuals.

70. As a result of Scott's efforts and significant recruiting activities, BDA has signed several players as clients.

71. Scott has conferred a significant benefit to BDA.

72. BDA knowingly accepted these benefits conferred by Scott and as a result BDA has been unjustly enriched.

73. The circumstances described in this Counterclaim are such that it would be inequitable for BDA to retain the benefits without paying their value to Scott.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant for unjust enrichment according to proof, together with prejudgment interest, reasonable attorney's

fees, the costs of this action as well as such further relief as this Court may deem just and proper.

## COUNT VII
## QUANUM MERUIT

74. Scott realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

75. In connection with his relationship with BDA, Scott performed services relating to the recruitment of certain college, NBA and other professional athletes.

76. The services were performed under the circumstance where BDA understood that Scott was to be the agent of record for the purposes of those athletes.

77. BDA ousted Scott and retained those clients recruited by Scott.

78. Scott conferred a substantial benefit on BDA in the form of business opportunities and recruits, and all other incidental benefits flowing therefrom, including but not limited to significant agency fees and commissions.

79. BDA has been unjustly enriched and injustice would result if Scott is not adequately compensated for his services and the substantial benefits conferred upon BDA.

**WHEREFORE,** Scott demands judgment in his favor and against Counter-Defendant for restitution and compensation for services performed, recruiting efforts and contributions made, according to proof, together with prejudgment interest, reasonable attorney's fees, the costs of this action as well as such further relief as this Court may deem just and proper.

```
 1
 2   Dated: July 3, 2008                    SQUIRE, SANDERS & DEMPSEY L.L.P.
 3
 4                                          By:       /s/
                                                  Mia Burroughs Fraser
 5
                                            Attorneys for Defendant
 6                                          MERLE SCOTT

 7                                          Robert C.L. Vaughan, Esq.
                                            Mia Burroughs Fraser, Esq.
 8                                          SQUIRE, SANDERS AND DEMPSEY L.L.P.
                                            200 South Biscayne Blvd., Suite 4000
 9                                          Miami, Florida 33131
                                            rvaughan@ssd.com
10                                          mburroughs@ssd.com
                                            Telephone:    (209) 477-8171
11                                          Facsimile:    (209) 477-2549
                                            Admitted Pro Hac Vice in the Northern District
12                                          of California
13
14
...
28
```

**CERTIFICATE OF SERVICE**

I, MIA BURROUGHS FRASER, am employed in the County of Miami-Dade, State of Florida. I am over the age of 18 and not a party to the within action; my business address is 200 South Biscayne Boulevard, Suite 4000 Miami, Florida 33134

On July 3, 2008, I served the foregoing document described as:

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

☒ Via United States District Court Electronic Filing Service on the party(ies) as set forth below.

BROWN, HALL, SHORE & MCKINLEY
John R. Conger, Esq. (State Bar # 168114)
Bill J. Kuenzinger, Esq. (State Bar # 159168)
3031 West March Lane, Suite 230 W
Stockton, CA 95219-6500
jconger@bhsmck.com
bkuenzinger@bhsmck.com
Telephone: (209) 477-8171
Facsimile: (209) 477-2549

*Attorneys for Plaintiff*

Executed on July 3, 2008, at Miami, Florida. I declare that I am a member of the bar of this court *pro hac vice*.

I declare under penalty of perjury under the laws of the Florida that the above is true and correct.

   Mia Burroughs Fraser                        /s/
                                                  (Signature)

MIAMI/4218977.1